**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| STEPHEN LAWLESS, et al., individually and on behalf of all individuals similarly situated, | Civil No. 20-13819 (RMB/SAK) |
| Plaintiffs, | **OPINION** |
| v. | |
| AURORA CANNABIS INC., et al., | |
| Defendants. | |

**APPEARANCES:**

GUSTAVO FABIAN BRUCKNER
POMERANTZ LLP
600 THIRD AVENUE, 20TH FLOOR
NEW YORK, NEW YORK 10016

   *On behalf of Plaintiff Stephen Lawless*

EDUARD KORSINSKY
LEVI & KORSINSKY LLP
55 BROADWAY, 10TH FLOOR
NEW YORK, NEW YORK 10006

   *On behalf of Plaintiffs Jeff Chang and Kelly Chang*

MATTHEW GUARNERO
BERNSTEIN LIEBHARD LLP
10 EAST 40TH STREET, 28TH FLOOR
NEW YORK, NEW YORK 10016

   *On behalf of Plaintiff Lazaris Tanos*

LAWRENCE P. EAGEL
BRAGAR EAGEL & SQUIRE, P.C.
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019

   *On behalf of Plaintiff Lawrence Oberti*

LAURENCE M. ROSEN
THE ROSEN LAW FIRM, PA
609 W. SOUTH ORANGE AVENUE, SUITE 2P
SOUTH ORANGE, NEW JERSEY 07079

    *On behalf of Plaintiffs Anthony Weiland, Steven H. Dunkleberger, and Piergiorgio Piga*

AUDRA DEPAOLO
PETER S. PEARLMAN
COHN LIFLAND PEARLMAN HERMANN & KNOPF LLP
PARK 90 WEST, PLAZA ONE
250 PEHLE AVENUE, SUITE 401
SADDLE BROOK, NEW JERSEY 07663

    *On behalf of Plaintiffs Marcel Benson and Ruth Benson*

LISA J. RODRIGUEZ
SCHNADER HARRISON SEGAL & LEWIS LLP
WOODLAND FALLS CORPORATE PARK
220 LAKE DRIVE EAST, SUITE 200
CHERRY HILL, NEW JERSEY 08002

    *On behalf of Plaintiff Sean O'Connell*

GUSTAVO FABIAN BRUCKNER
POMERANTZ LLP
600 THIRD AVENUE, 20TH FLOOR
NEW YORK, NEW YORK 10016

    *On behalf of Plaintiff Stephen Lawless*

KERRI E. CHEWNING
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE, P.O. BOX 3000
HADDONFIELD, NEW JERSEY 08033

    *On behalf of Defendants Aurora Cannabis Inc., Michael Singer, and Glen Ibbott*

ANDREW JOSHUA LICHTMAN
JENNER & BLOCK LLP
919 THIRD AVENUE, 38TH FLOOR
NEW YORK, NEW YORK 10022

    *On behalf of Defendants Aurora Cannabis Inc., Michael Singer, and Glen Ibbott*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motions to Appoint Lead Plaintiff by Plaintiffs Marcel Benson and Ruth Benson (the "Bensons") [Docket No. 11]; Sean O'Connell [Docket No. 12]; Jeff Chang and Kelly Chang (the "Changs") [Docket No. 13]; Lazaris Tanos [Docket No. 14]; Lawrence Oberti [Docket No. 15]; and Anthony Weiland, Stephen H. Dunkleberger, and Piergiorgio Piga (the "Aurora Investor Group" or "Group" and, collectively, "Movants") [Docket No. 16]. For the reasons expressed below, the Court will grant, in part, the Aurora Investor Group's Motion [Docket No. 16] and deny the rest.

## I.   BACKGROUND

This putative class action stems from alleged false representations made by Defendants Aurora Cannabis Inc. ("Aurora"); Aurora's Interim Chief Executive Officer and Executive Chairman of the Board of Directors, Michael Singer; and Aurora's Chief Financial Officer, Glen Ibbott. [Docket No. 1.] Specifically, Plaintiffs allege that Defendants' statements violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (Count I), and Section 20(a) of the Securities Exchange Act (Count II). [Id., ¶¶ 57-72.]

The Complaint in this matter was filed on October 2, 2020. [Docket No. 1.] The above-listed Plaintiffs filed their respective

Motions to Appoint Lead Plaintiff on December 1, 2020. [Docket Nos. 11-16.] Those Plaintiffs filed further briefs and notices between December 4 and 28, 2020. [Docket Nos. 18, 22, 26, 28-30, 33-35.]

## II. STANDARD

In a class action such as this one, the lead plaintiff is determined pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. The PSLRA states that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." Id. § 78u-4(a)(3)(B)(i). Moreover, whichever plaintiff or group of plaintiffs (1) filed the complaint or made a motion to be appointed lead plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" shall be the presumptive most adequate plaintiff. Id. § 78u-4(a)(3)(B)(iii)(I). This presumption can be rebutted if a putative class member provides "proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

## III. ANALYSIS

Here, there are three Movants whose Motions to Appoint Lead Counsel are before the Court: O'Connell [Docket No. 12]; Oberti [Docket No. 15]; and the Aurora Investor Group [Docket No. 16] (collectively, the "remaining Movants").[1] Each of them timely filed Motions, so they have satisfied the first requirement listed above. Additionally, each argues that each has the largest financial interest and otherwise satisfies the Rule 23 requirements. Both of those requirements are crucial to determining who will be lead plaintiff in this matter.

### A. The Largest Financial Interest

The PSLRA does not instruct courts on how to determine the "largest financial interest." However, the Third Circuit has articulated three factors, among other things, to consider: "(1) the number of shares that the movant purchased during the putative

---

[1] The Court notes that seven Plaintiffs or groups of Plaintiffs satisfied the first factor listed above by either filing the Complaint or filing a timely Motion to Appoint Lead Counsel. [Docket Nos. 1, 11-16.] However, after filing their Motions, three Movants notified the Court that they were not, in fact, the Plaintiffs with the largest financial interest in the relief sought by the class, and therefore should not be appointed lead plaintiffs per Section 78u-4(a)(3)(B)(iii)(I)(bb). [Docket Nos. 18, 19, 22.] Therefore, the Court will deny the Motions filed by the Bensons [Docket Nos. 11, 18]; the Changs [Docket Nos. 13, 26]; and Tanos [Docket Nos. 14, 22].

Moreover, the Court notes that Plaintiff Stephen Lawless, who filed the Complaint, does not have the greatest financial interest, and therefore should not be appointed lead plaintiff. [See Docket No. 1, at 38 (PDF pagination) (indicating that Lawless purchased 86 shares at $8.00 per share on April 16, 2020).]

class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001). "The third factor, 'approximate losses suffered,' is often considered the most important." Stires v. Eco Science Solutions, Inc., Civil Nos. 17-3707, 17-3760, 17-5161, 2018 U.S. Dist. LEXIS 25088, at *9 (D.N.J. Feb. 13, 2018). "Indeed, courts in this circuit have accorded the third element, the largest financial loss, the greatest weight." Roby v. Ocean Power Techs., Civil Nos. 14-3799, 14-3815, 14-4015, 14-4592, 2015 U.S. Dist. LEXIS 42388, at *14 (D.N.J. Mar. 17, 2015) (citing numerous cases). In this case, O'Connell and Oberti offer different approaches to determining which remaining Movant has the largest financial interest. Specifically, O'Connell argues that the remaining Movant with the largest number of net shares purchased should be appointed lead plaintiff. [Docket No. 30, at 3-5.] Conversely, Oberti argues that the remaining Movant with the largest approximate losses suffered should be appointed lead plaintiff. [Docket No. 28, at 3-7.]

As the below table shows, the Aurora Investor Group collectively has both the most net shares purchased and the largest approximate losses suffered.[2]

---

[2] Additionally, it is undisputed that the Aurora Investor Group – both collectively and individually (Piga) – expended the greatest

| Movant | Net Shares Purchased (Retained Shares) | Approximate Losses Suffered |
|---|---|---|
| **Aurora Investor Group** | | **$230,633.00** |
| (*Anthony Weiland,* | *7,000* | *$71,826.00* |
| *Steven Dunkleberger,* | *26,086* | *$97,335.00* |
| *and Piergiorgio Piga*) | *11,941* | *$61,472.00* |
| Sean O'Connell | **20,865** | **$67,937.58** |
| Lawrence Oberti | **15,000** | **$168,307.50** |

[See Docket No. 29, at 3.] Therefore, as a preliminary matter, the Aurora Investor Group has the largest financial interest regardless of which factor the Court affords more weight.

However, Oberti argues that a group should only be appointed lead plaintiff if the group contains the individual with the largest financial interest. [See Docket No. 28, at 3-7.] While the Aurora Investor Group has the largest number of net shares purchased both individually (Dunkleberger) and collectively, it only has the greatest approximate losses suffered when its members' losses are combined. Looking individually, Oberti suffered greater approximate losses than any of the Aurora Investor Group's members. Therefore, the Court must determine whether it is appropriate in this case to appoint as lead counsel a group that has the largest collective financial interest, but does not count among its members the individual with the largest financial interest.

While Oberti cites numerous cases in which an individual was appointed lead plaintiff rather than a group that collectively had

amount of net funds of the remaining Movants. [See Docket No. 35, at 2.]

a larger financial interest, [see Docket No. 28, at 4-6], the Court finds that those cases either do not provide support for Oberti's argument or are not convincing with respect to this "case-by-case" "[d]etermination of whether the grouping would best serve the class." See Fries v. N. Oil Gas, Inc., No. 16-civ-6543, 2017 U.S. Dist. LEXIS 69674, at *6 (S.D.N.Y. May 8, 2017).

In particular, Oberti cites a case, discussed in more detail below, in which this Court wrote, "the [group movant] collectively lost $303,208.42 and [the individual movant] lost $294,666.00. Thus, the [group movant] has the 'largest financial interest in the relief sought by the class' and will be the presumptive most adequate plaintiff if it 'otherwise satisfies' the typicality and adequacy requirements of Rule 23." Stires v. Eco Science Solutions, Inc., Civil Nos. 17-3707, 17-3760, 17-5161, 2018 U.S. Dist. LEXIS 25088, at *9-10 (D.N.J. Feb. 13, 2018). While Oberti is correct that the Court ultimately did not appoint the group movant as lead plaintiff, see id. at *10-15, the Court declined to appoint the group as lead plaintiff due to Rule 23 concerns. The Court sees no convincing reason to treat this case any differently than Stires in this regard.

This is especially so given the fact that the Aurora Investor Group includes the individual with both the largest amount of net shares purchased (Dunkleberger) and the largest amount of net funds expended (Piga) — two of the three factors outlined by the Third

Circuit. Given that the Group also collectively suffered the greatest approximate losses, the Court concludes that it has the largest financial interest. In short, the Aurora Investor Group has a larger financial interest than any other Movant because it collectively suffered the greatest approximate losses and because it counts among its members the individuals who purchased the most shares during the class period and who expended the most net funds during the class period. See In re Cendant Corp., 264 F.3d at 262. Therefore, it is the presumptive most adequate plaintiff so long as it satisfies the Rule 23 requirements.

### B.    Rule 23 Requirements

Having made the initial determination that the Aurora Investor Group has the largest financial interest of the remaining Movants, the Court will address the parties' – mainly O'Connell's – arguments as to whether the Group satisfies the Rule 23 requirements.

"The Third Circuit has provided that '[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies Rule 23) should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy.'" Stires, 2018 U.S. Dist. LEXIS 25088, at *10 (quoting In re Cendant Corp., 264 F.3d at 263). In making this "independent judgment" based on "traditional Rule 23 principles," the Court "may and should consider the pleadings that

have been filed, the movant's application, and any other information that the court requires to be submitted." <u>In re Cendant Corp.</u>, 264 F.3d at 263-64.

> Thus, in inquiring whether the movant has preliminarily satisfied the typicality requirement, they should consider whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based."
>
> . . . .
>
> In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."

<u>Id.</u> at 264-65 (alterations in original) (internal quotation marks and citations omitted).

"In the PSLRA context, there are two additional factors regarding adequacy." <u>Stires</u>, 2018 U.S. Dist. LEXIS 25088, at *11. The first is "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." <u>In re Cendant Corp.</u>, 264 F.3d at 265. The second is "[whether] the way in which . . . [the] group . . . was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff." <u>Id.</u> at 266 (alterations in original). This second additional factor, which is the basis of O'Connell's

argument as to why the Aurora Investor Group is ineligible, "arise[s] only when the movant with the largest interest in the relief sought by the class is a group rather than an individual person or entity." Id.

Here, there is no contention that the Aurora Investor Group does not satisfy Rule 23's typicality requirement. As its brief points out, the Group, "like all Class members, purchased Aurora securities at prices artificially inflated by the Company's misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations or omissions. These shared claims . . . are based on the same legal theory . . . and arise from the same events and course of conduct as the Class's claims. [Docket No. 29, at 4.] The Court agrees with this analysis. Therefore, the Aurora Investor Group satisfies Rules 23 typicality requirement.

Turning to Rule 23's adequacy requirement, the Court first notes that there can be no dispute that the Aurora Investor Group's individual members suffered significant losses that give it sufficient "incentive to represent the claims of the class vigorously" in this action. Moreover, as discussed in further detail below, the Group has already obtained adequate counsel, and there is no apparent conflict between the Group's claims and those asserted on behalf of the class. Therefore, the Aurora Investor Group satisfies Rule 23's adequacy requirement.

The Aurora Investor Group also partially satisfies the first additional PSLRA-specific factor – "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." In re Cendant Corp., 264 F.3d at 265. Again, the Group has already selected competent class counsel. While the Court is unaware of the Group's retainer agreement with Counsel, it has no reason to believe that the agreement is unreasonable. Moreover, this does not outweigh the rest of the factors that the Court must consider. With that being said, if the retainer agreement is shown to be unreasonable during the course of this litigation, the Court will address it.

Finally, the Court turns to the second additional PSLRA-specific factor – whether "the way in which . . . [the] group . . . was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff." Id. at 266. It is with respect to this factor that O'Connell argues that the Aurora Investor Group is ineligible to be lead plaintiff. O'Connell argues that, as "a collection of unrelated investors, cobbled together by its counsel for purposes of achieving lead plaintiff (and lead counsel) status," the Aurora Investor Group "would be inadequate class representatives." [Docket No. 30, at 5.] Specifically, O'Connell notes that the Aurora Investor Group members are from different states and countries (Virginia,

California, and Belgium); have different jobs (an engineer, a real estate investor, and a retired engineer); and there is no indication as to how or even if the members have ever met, and if they ever communicated with each other prior to this litigation. [Id. at 5-6.]

O'Connell relies primarily on a previous case decided by this Court, in which the Court declined to appoint a group of unrelated individuals as lead plaintiff. Stires, 2018 U.S. Dist. LEXIS 25088, at *13-14. In that case, the Court noted that the Third Circuit has stated that, while a group of unrelated individuals "may band together to serve as lead plaintiff under the PSLRA," there may be certain instances in which such "a group lead plaintiff movant might fail on adequacy grounds," such as "where 'the movant "group"' with the largest losses has been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel.'" Id. at *12-13 (quoting In re Cendant Corp., 264 F.3d at 267). In such scenario, the Third Circuit has stated that "a court 'could well conclude, based on this history, that the members of that "group" could not be counted on to monitor counsel in a sufficient manner.'" Id. (citing In re Cendant Corp., 264 F.3d at 267).

While the movant group in Stires does share certain similarities with the Aurora Investor Group — for instance, both groups are from diverse locations and have different occupations —

there is a crucial distinction between the groups. In Stires, the movant group did not file a joint declaration until two weeks after it filed its motion to be appointed lead plaintiff. Id. at *13-14. The joint declaration indicated to the Court that the members of the movant group might not have even agreed to join the group until a week after the group's motion was filed: "What the Joint Declaration does not provide, and what is conspicuously absent, is any information regarding how these five apparent strangers from different states found each other. Moreover, if the group members held a conference call August 1, 2017 to discuss such preliminary matters, it is not clear to the Court how they could have made the joint decision to serve as lead plaintiff prior to the filing of their motion on July 24, 2017." Id. at *15. Therefore, the Court determined that the Stires movant group could not satisfy Rule 23's requirements because it "cannot be counted on to monitor counsel in a sufficient manner." Id. That group was "precisely the type of lawyer-created group the Third Circuit cautioned about in In re Cendant Corp." Id. at *13.

Here, the Court finds that the Aurora Investor Group satisfies the second additional factor. Although the members in the Aurora Investor Group are from different parts of the world and have different professions, the PSLRA "contains no requirement mandating that the members of a group be 'related' in some manner." In re Cendant Corp., 264 at 266. Rather, "it requires only that

any such group 'fairly and adequately protect the interests of the class.'" <u>Id.</u> (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). The Aurora Investor Group's Joint Declaration was signed before and filed simultaneously with its Motion, unlike in <u>Stires</u>. [<u>See</u> Docket No. 16-7.] The Joint Declaration indicated the individual members' knowing agreement with each other to join the Group, to achieve the best possible result for the Class, and to work together in good faith to accomplish their goals, among other important considerations. [<u>See</u> <u>id.</u> ¶¶ 5-13.] This Group, therefore, does not appear to fit the mold of the "lawyer-driven group" that the <u>In re Cendant Corp.</u> Court cautioned against. This is a relatively small group of three individual investors whose individual injuries are comparable to those of both O'Connell and Oberti. The Court further notes that the appointment of a small group of individuals as lead plaintiff has certain advantages over the appointment of a single individual, including avoiding the re-determination of lead plaintiff if an individual lead plaintiff is unable to serve or is deemed inadequate after appointment.

Therefore, the Court finds that the Aurora Investor Group also satisfies the second additional PSLRA-specific factor and, as a result, satisfies all the Rule 23 requirements. Having satisfied all of the Section 78u-4(a)(3)(B)(iii)(I) factors – that is to say, the Group (1) filed the complaint or made a motion to be appointed lead plaintiff, (2) "has the largest financial interest

in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" — the Aurora Investor Group is the presumptive lead plaintiff and will be named lead plaintiff unless the presumption is rebutted.

### C. Evidence to Rebut the Presumption

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted." In re Cendant Corp., 264 F.3d at 268.

> [T]he presumption "may be rebutted only upon proof by a
> member of the purported plaintiff class that the
> presumptively most adequate plaintiff – (aa) will not
> fairly and adequately protect the interests of the
> class; or (bb) is subject to unique defenses that render
> such plaintiff incapable of adequately representing the
> class."

Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (emphasis in original).

> [O]nce the presumption is triggered, the question is not
> whether another movant might do a better job of
> protecting the interests of the class than the
> presumptive lead plaintiff; instead, the question is
> whether anyone can prove that the presumptive lead
> plaintiff will not do a 'fair[] and adequate[]' job.

Id. (alterations in original). "If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff." Id.

Earlier in this Opinion, this Court rejected the parties' arguments that the Aurora Investor Group will not do a fair and

adequate job pursuing the Class's interests as lead plaintiff. The Court incorporates that analysis here, and concludes that the presumption cannot be rebutted and that the Aurora Investor Group will therefore be appointed lead plaintiff.

### D.  Appointment of Lead Counsel

Per the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). As the Court has determined the Aurora Investor Group to be the most adequate plaintiff, it will now consider the Group's selection of The Rosen Law Firm P.A. ("Rosen Law") and Pomerantz LLP ("Pomerantz") as co-lead counsel.

Generally, courts "should . . . employ a deferential standard in reviewing the lead plaintiff's choices." In re Cendant Corp., 264 F.3d at 274. "Courts are not, however, a rubber-stamp for plaintiffs' selection of counsel, and an inquiry into 'whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms' is necessary." Stires, 2018 U.S. Dist. LEXIS 25088, at *18 (quoting In re Cendant Corp., 264 F.3d at 276). A court analyzing this inquiry should consider, among other things,

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of

counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

In re Cendant Corp., 264 F.3d at 276. "[A]t bottom, the ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." Id.

Here, it is evident based on their resumes that both Rosen Law and Pomerantz have substantial relevant experience and expertise. [Docket Nos. 16-8, 16-9.] However, the Court lacks sufficient information to conclude as to the remaining factors outlined above – namely, the Aurora Investor Group's "quantum of legal experience and sophistication," how the Group decided which firms to consider and ultimately chose Rosen Law and Pomerantz, and any information about the retainer agreement and how it was negotiated.

Without this information, the Court is not in a position to answer the "ultimate inquiry" of whether the Aurora Investor Group's "choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." Id. Therefore, the Court will reserve judgment on the

appointment of lead counsel pending additional briefing from the Aurora Investor Group on the above issues.[3]

**IV.  CONCLUSION**

An accompanying Order embodying this Court's ruling shall issue.


July 7, 2021                          s/Renée Marie Bumb
Date                                  RENÉE MARIE BUMB
                                      United States District Judge

---

[3] The Court notes that Oberti also argues that appointing Co-Lead Counsel is inappropriate here. The Court is not convinced by that argument at this point, given that the two firms have extensive experience working together in cases such as these. [See Docket No. 16-2, at 11.]